**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| GEANELLE PAGE, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | 3:06-cv-696-AS-CAN |

**MEMORANDUM OPINION & ORDER**

Plaintiff, Geanelle Page ("Ms. Page"), seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Acting for the Commissioner of Social Security, an Administrative Law Judge ("ALJ") found that Ms. Page was not disabled as defined in the Social Security Act. 42 U.S.C. § 416 (I). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Ms. Page applied for DIB on May 14, 2003, claiming an alleged disability onset date of April 1, 2002. (Tr. 51-53). The claim was denied on August 11, 2003, and a request for reconsideration was denied on January 19, 2004. (Tr. 34-35, 39-42). Ms. Page then requested a hearing before an ALJ, which was conducted before Judge John S. Pope on February 7, 2005. (Tr. 346-89). The ALJ issued a decision on December 29, 2005, ruling that Ms. Page was not disabled because she was still able to perform past relevant work despite her physical and mental impairments. (Tr. 12-19). The Appeals Council denied

further review of the ALJ's decision on August 11, 2006, and consequently, the ALJ's decision is treated as the final decision of the Commissioner. Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). Ms. Page filed a timely petition for judicial review in the Northern District of Indiana, which this Court now considers.

## I. Statement of Facts

Ms. Page was thirty-five years old at the date of the ALJ's decision, and had earned a high school education and a CNA Nursing license. (Tr. 350, 352, 354). She had past work experience as a manager of a hair and tanning salon, fast-food worker, nursing assistant, and printing press operator. (Tr. 354-57).

A. Medical Evidence

Ms. Page claims she is unable to work because of back pain, irritable bowel syndrome, depression, and headaches. (Tr. 358-59, 370). Her relevant medical history spans over two years, beginning in April 2002, when she went to the emergency room with complaints of back pain. (Tr. 103-07). X-rays of her lumbosacral spine were negative. (Tr. 107, 122). The doctor prescribed pain medication, and discharged Ms. Page. (Tr. 106).

Ms. Page continued to complain of back pain and was referred to Dr. William Michael Roper, M.D. (Tr. 120, 229). On April 16, 2002, Ms. Page visited Dr. Roper, reporting lower back pain, dizziness, and nausea. (Tr. 120, 229). Dr. Roper indicated that Ms. Page had a lumbar strain with some sacroilitis and ordered a total body bone scan. (Tr. 119, 228). However, no abnormalities were evident on the bone scan. (Tr. 118). Dr. Roper prescribed

Ibuprofen and kept Ms. Page off of work for a month. (Tr. 117, 337).

In June 2002, Dr. Roper stated that he believed he had no "further things . . . to add to this case," and he referred Ms. Page to Eric M. Schreier, D.O. (Tr. 176-78, 226). Dr. Schreier reported that Ms. Page suffered from chronic mechanical low back dysfunction with sacroillac torsion syndrome, and endogenous obesity/chronic strain. (Tr. 174, 177). He also gave Ms. Page a sacroiliac injection. (Tr. 174, 177). Dr. Schreier was of the opinion that Ms. Page could "start now weaning herself back into the work force." (Tr. 174).

In September 2002, Dr. Roper ordered an MRI scan, which revealed a moderate disc rupture at L4-5 level on the left. (Tr. 112-14, 130, 226). Additionally, Dr. Roper ordered a nerve block, which was administered by W. J. Granger, M.D. Though the nerve block did not give complete relief, Ms. Page's relief was significant. (Tr. 124-25, 127-28, 222-23, 225, Pl. Br. at 5-6). Dr. Roper noted Ms. Page's complaints were atypical because the MRI showed a rupture on the left, yet Ms. Page complained of pain on the right. (Tr. 108-09, 111, 237).

In November 2002, Dr. Roper recommended Ms. Page visit Dr. Jeff Kachmann for yet another opinion. (Tr. 111). On December 19, 2002, Ms. Page underwent a left L4-5 disketomy, which was performed by Dr. Kachmann. (Tr. 234-35). On January 29, 2003, a post-surgical MRI scan was administered by Dr. Edward C. Weber. Dr. Weber noted the findings to be unremarkable. (Tr. 138-39). Likewise, when Dr. Kachmann reviewed the MRI report he noted that "it looks great." (Tr. 165).

3

At this point in the factual chronology, Ms. Page's brief omits the next year's worth of medical reviews, including the opinions of the State agency physicians. Nevertheless, on July 19, 2003, Ms. Page was examined by Dr. Noe Marandet at the request of the Indiana Disability Determination Bureau. (Tr. 179). Dr. Marandet's examination yielded the same diagnosis that Ms. Page received from her previous doctors, namely: degenerative disc disease, status post-laminectomy, migraine headaches, depression, irritable bowel syndrome, and peptic ulcer disease. (179-82).

In August of 2003, following Dr. Marandet's examination, Dr. J. Sands reviewed Ms. Page's records for the State agency and completed a "Physical Residual Functional Capacity Assessment" form. (Tr. 184-92). Dr. Sands opined that Ms. Page is capable of performing work at a light exertional level. (Tr. 185). In January 2004, an unidentifiable physician reviewed Dr. Sands' findings and affirmed the functional capacity assessment. (Tr. 191).

Also in August of 2003, Dr. K. Neville reviewed Ms. Page's records for the State agency. (Tr. 193-206). Dr. Neville concluded that the "[c]laimant's mental conditions do not severely affect her functioning." (Tr. 205). Dr. Neville's conclusions were reviewed and affirmed by another physician, Dr. J. Gange, in January 2004.

Ms. Page returned to Dr. Kachmann on April 9, 2004, complaining of lower back pain. (Tr. 240-41). Dr. Kachmann reviewed an MRI from March 2004 and noted that the scan revealed various bulges and protrusions, but no significant neural impairment. (Tr. 240).

Dr. Kachmann further perceived that Ms. Page was not sufficiently motivated to reduce her weight which could have improved her pain significantly. (Tr. 240). Dr. Kachmann did not believe further surgery was necessary and referred Ms. Page to Dr. David Lutz. (Tr. 241). Dr. Lutz administered a caudal epidural steroid injection on November 3, 2004, in an effort to alleviate the complained of pain. (Tr. 248). While Ms. Page continues her rehabilitative medication, her testimony indicates that her impairments and symptoms remain unchanged.

B. Hearing Testimony

During the administrative hearing on February 7, 2005, the ALJ heard testimony from both Ms. Page and vocational expert Robert Barkkaus.

First, Ms. Page testified that both physical and emotional impairments interfere with her ability to work. (Tr. 358-65, 370-73). Beyond her back troubles, Ms. Page complained of irritable bowel syndrome, migraine headaches, depression, anxiety, and concentration issues. (Tr. 363, 370-73). Ms. Page also testified that her depression and anxieties caused an inability to function. (Tr. 370, 379).

In response to the ALJ's questions, Ms. Page stated that she can lift ten pounds, walk the length of one aisle in a store, stand for fifteen minutes, sit for thirty minutes on a good day, and only sit for approximately fifteen minutes on a bad day. (Tr. 374-76). Ms. Page testified that she does not perform household chores, she naps for a half-hour to two hours every day, and she only goes out into public when her fiancé takes her. (Tr. 366-69). Additionally, she testified that she had panic attacks when she was in crowds. (Tr. 379).

While Ms. Page testified that she does not see friends anymore, she still is able to attend her child's softball games. (Tr. 372-73). Additionally, Ms. Page sees various family members at least once a week and goes shopping with her fiancé. (Tr. 372, 368).

Additionally, vocational expert Robert Barkkaus testified at the hearing. (Tr. 384-88). The ALJ asked the vocational expert to consider a "hypothetical individual in the age range of 33 to 35, educated at high school graduate level, past relevant work same as the claimant's limited light work." (Tr. 387). Given the limitations, Mr. Barkkaus testified that such an individual could perform claimant's past work as a manager and a fast-food worker, as well as other unskilled light jobs, such as cashier, sales attendant, and production assembly work. (Tr. 387-388). According to Mr. Barkkaus, these unskilled light jobs sufficiently exist in the regional economy of Northern Indiana. (Tr. 387-388).

C. The ALJ's Decision

The ALJ found that although the medical evidence established that Ms. Page has "severe" impairments consisting of degenerative disc disorder, status post lumbar discectomy, and obesity, she retains the residual functional capacity to perform a range of light exertional work. The ALJ further found that Ms. Page's additional impairments, consisting of migraine headaches, type II diabetes, depression, and anxiety, are not severe impairments as they do not severely affect her functioning. Thus, based on the application filed on May 14, 2003, the ALJ concluded that Ms. Page was not entitled to a period of disability or DIB as defined in the Social Security Act.

## II. Standard of Review

This Court's review of the Commissioner's decision is a limited one. Unless there is an error of law, this Court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. Shoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 399-400 (1971). In making a substantial evidence determination, this Court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner. Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999).

That being said, this Court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). This Court must ensure that the ALJ has built "an accurate and logical bridge between the evidence and the result." Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000). However, if reasonable minds could disagree on whether an individual is disabled, the court must affirm the Commissioner's decision denying benefits. Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000); Books v. Chater, 91 F.3d 972, 978 (7th Cir. 1996).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witness. Clifford, 227 F.3d at 872. The Court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." Prochaska v. Barnhart, 454 F.3d

7

731, 738 (7th Cir. 2006) (citing Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004)).

Furthermore, the claimant--in this case Ms. Page--has the burden of establishing that she was disabled on or before the date her insured status expired. Bolinger v. Barnhart, 446 F. Supp. 2d 950, 954 (N.D. Ind. 2006) (citing Estok v. Apfel, 152 F.3d 636, 640 (7th Cir.1998). Accordingly, the burden is on Ms. Page to provide testimony and medical evidence, supported by clinical data and laboratory diagnosis, evincing a disability occurring within the proper period of insured status. Reading v. Matthews, 542 F.2d 993, 997 (7th Cir. 1976) (citing Jeralds v. Richardson, 445 F.2d 36, 38-39 (7th Cir. 1971)). "Any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." Rice v. Shalala, 19 F.3d 22 (7th Cir. 1994).

### III.  Discussion

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520). The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. Clifford, 227 F.3d at 868.

In this case, the ALJ found that Ms. Page satisfied step one, and, at step two, had severe impairments consisting of degenerative disc disorder, status post lumbar discectomy, and obesity. (Tr. 14). However, at step three, the ALJ found that Ms. Page failed to demonstrate that any of her severe impairments met or equaled a listed impairment. (Tr. 15-16). Additionally, the ALJ determined Ms. Page possessed a residual functional capacity sufficient to perform light work despite her testimony to the contrary. (Tr. 16-18). Consequently, at step four, the ALJ found that Ms. Page was capable of performing past relevant work as a manager or a fast-food worker. (Tr. 18). Lastly, the ALJ accepted the testimony of the vocational expert that a significant number of jobs exist in the regional economy to which Ms. Page has the ability to make a successful vocational adjustment under step five. (Tr. 18).

On appeal before this Court, Ms. Page argues that the ALJ erred by (1) improperly assessing her credibility; (2) disregarding evidence; and (3) improperly establishing her residual functional capacity. Ms. Page further argues the Appeals Council erred by disregarding additional evidence that supported a review of the ALJ's decision.

1. The ALJ's Credibility Determination

Ms. Page first asserts that the ALJ did not properly assess her testimony concerning

9

her symptoms. Again, this Court will not disturb an ALJ's weighing of credibility so long as the determinations are based on some support in the record and are not "patently wrong." Prochaska, 454 F.3d at 738. Ms. Page relies on the unpublished decision of Ware v. Apfel, 2000 U.S. Dist. LEXIS 16747 (S.D. Ind. 2000), to argue that the ALJ's credibility determinations were wrong because the ALJ did not properly consider the following seven factors:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. Yet, as the Court wrote in Ware, "[t]he ALJ need not mechanically recite findings on each factor." Id. at 17. To the contrary, the determination is adequately supported by substantial evidence if the ALJ provides specific reasons for the decision beyond mere intuition.

In this case, the ALJ considers the inconsistencies in Ms. Page's testimony concerning her symptoms. For example, the ALJ notes that Ms. Page claims debilitating anxiety attacks when in public, yet attends soccer games and goes shopping (Tr. 16). This evaluation is a clear example of the ALJ evaluating the "individual's daily activities" as outlined in the

aforementioned Ware factors. While the ALJ does not mechanically link this inconsistency to a specific Ware factor, it is evident that he properly considered the factor. See Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996) (claimant's "testimony concerning his disabling pain and physical limitations [are] untenable when contrasted with his reported daily activities.").

Furthermore, the ALJ also found it "unlikely" that Ms. Page would have experienced the level of mental symptoms she describes without telling her primary treating physician during physical evaluations (Tr. 16). This is another example of the ALJ properly evaluating the factor of "treatment . . . the individual receives." Again, while the ALJ does not specifically link his finding to a factor, it is evident that the ALJ took proper consideration.

Because the ALJ provided specific reasoning for his findings and properly considered the Ware factors, this Court will not disturb the ALJ's credibility findings.

### 2. Evidence of Anxiety Attacks

Ms. Page next asserts the ALJ erred in disregarding an entire line of evidence contained in the record regarding her anxiety and panic attacks. Ms. Page claims that the "record contains several reports wherein Plaintiff made repeated statements to her physicians regarding her symptoms of anxiety and panic attacks" (Pl. Br. at 13). However, Ms. Page does not cite to any place in the record where these allegedly ignored medical records exist.

Moreover, the ALJ did not ignore evidence in the record, but instead stated that it was unlikely that Ms. Page experienced the level of symptoms she testified to without telling her

11

physician and seeking further treatment. Thus, the ALJ explained the inconsistencies underlying Ms. Page's testimony and found her testimony lacking in credibility. See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ is in the best position to determine a witness's truthfulness and forthrightness"). Since these determinations are supported in the record, this Court will not disturb the ALJ's findings.

### 3. Ms. Page's Residual Functional Capacity

Ms. Page next asserts that no evidence within the record supports the finding that she is capable of performing light work. Yet, this assertion is contrary to the evidence provided in the record. The ALJ adequately constructed "an accurate and logical bridge between the evidence and the result." Shramek, 226 F.3d at 811. Though Ms. Page's recitation of facts omits the examination and reviews of Drs. Marandet, Sands, and Neville, each of these physician's opinions was contained in the record presented to the ALJ, and were properly relied upon by the ALJ. (Tr. 17-18). See Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of [state agency] physicians and psychologists who are also experts in social security disability evaluation.") The decision of the ALJ, as to the residual functional capacity, is therefore supported by substantial evidence and will not be disturbed by this Court.

### 4. The Decision of the Appeals Council

Lastly, Ms. Page asserts that the Appeals Council erred by failing to consider evidence submitted to it after the ALJ rendered his decision. Ms. Page submitted additional medical

records to the Appeals Council on June 28, 2006 and July 25, 2006. (Pl. Br. at 14). The Appeals Council did not "list" these medical records within the Order denying review. (Tr. 7). Consequently, Ms. Page argues that the Appeals Council did not consider the additional evidence and that such evidence would have "changed the outcome of the Administrative Law Judge's decision," thus requiring review. Creighton v. Sullivan, 798 F. Supp. 1359 (N.D. Ind. 1992).

The Appeals Council denied review of the ALJ's decision on August 11, 2006. (Tr. 4-6). Since the Appeals Council denied the request for review, that denial is not itself a final appealable order. Eads v. Secretary of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). Only the ALJ's decision is appealable, having been made final by the refusal to review. Id. at 817. This Court's review is therefore limited to the ALJ's decision because the decision of the Appeals Council to refuse review is discretionary.

However, if the denial of review by the Appeals Council rests on a mistake of law, this Court can reverse upon a showing that the additional evidence is new, material, and that good cause exists for not introducing it during the administrative proceedings. 42 U.S.C. § 405(g); Zblewski v. Astrue, 2008 WL 5206384, *5 (7th Cir. Dec. 15, 2008) (citing Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir. 2003)). To justify a remand under sentence six of 42 U.S.C. § 405(g), "new" means "not in existence or available to the claimant at the time of the administrative hearing." Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005). Furthermore, evidence is "material" only if it is reasonably probable that the ALJ would have

13

reached a different conclusion if he had considered the evidence. Id. at 741-42. Finally, there must exist "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id.

As to the additional evidence consisting of Ms. Page's MRI, there is no demonstrated possibility that these additional medical records would change the outcome of the ALJ's decision. Id.; Sears v. Bowen, 840 F.2d 394, 399 (7th Cir. 1988). The MRI does nothing to establish that Ms. Page had a disability beginning on or around April 1, 2002 that continued for at least twelve months thereafter. To the contrary, the MRI reportedly shows evidence of Ms. Page's deterioration following her slip and fall, which allegedly occurred after the ALJ's hearing, but before his decision was rendered. If this slip and fall resulted in a disability to Ms. Page, her remedy is not reconsideration before the Appeals Council, but rather, filing a new application for DIB. See, e.g., Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008) ("If [claimant] has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application.") (quoting Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir.1989)).

As to the additional evidence consisting of Ms. Page's treatment at the Bowen Center, this evidence is not "new" for the purposes of a 'sentence six remand' as it was based on evidence that had long been available to Ms. Page. See Cromer v. Apfel, No. 00-1858 at 4 (7th Cir. Oct. 4 2000); Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir.1997) (holding that though a physician's evaluations were "technically not in existence at the time of the . . .

hearing, he based his conclusions entirely on evidence that had long been available" and thus, the additional evidence was "available" at the time of the earlier proceeding and did not qualify under sentence six as "new."). In addition, Ms. Page has failed to demonstrate "good cause" for her failure to produce the evidence at a prior proceeding. Indeed, Ms. Page fails to provide *any* reason for her failure to incorporate this evidence into the record prior to June 2006.

Accordingly, because none of the additional evidence meets the requirements for a remand under sentence six of 42 U.S.C. § 405(g), the denial of review by the Appeals Council is not subject to judicial review by this Court.

### IV. Conclusion

The purpose of this Court's limited review of the ALJ's decision is to ensure that it is supported by substantial evidence. Since the ALJ's decision was supported by substantial evidence, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

**Date: January 5, 2009**  /s/ ALLEN SHARP
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**